# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| ADALBERTO M. ANDRADE, | ) |
| Petitioner, | ) |
| v. | ) 4:04-cv-00962-RBP-JEO |
| JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES, et al., | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

On May 3, 2004, petitioner Adalberto Andrade, an immigration detainee confined in the Etowah County, Alabama jail, filed an application to proceed *in forma pauperis* and a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of Massachusetts. In the petition, Andrade challenged his confinement under *Zadvydas v. Davis*, 533 U.S. 678 (2001). That court transferred the matter to this District on May 10, 2004.

## PROCEDURAL HISTORY

This matter was assigned to a magistrate judge of this court who required that the petitioner pay a partial filing fee of $4.28 by August 21, 2004. (Doc. 6). When he did not pay the fee, the matter was dismissed on September 2, 2004. (Doc. 9). The petitioner thereafter informed the court that the fee had been sent on September 1, 2004. When the fee was received on September 14, 2004, the case was reopened on September 29, 2004. (Doc. 11). The court entered an order on October 5, 2004, to show cause requiring the respondents to appear and demonstrate why the relief requested by the petitioner should not be granted. (Doc. 12).

Following the granting of two short extensions for the respondents to file their answer, the court received their response on November 18, 2004. (Doc. 17). The petitioner was permitted an opportunity to reply. Following the granting of an extension of time for him to respond, the petitioner filed an objection to the respondents' answer on December 6, 2004. (Doc. 19).

## BACKGROUND

The petitioner is a native and citizen of Cape Verde. (Ex. A).[1] He was admitted to the United States at Boston, Massachusetts, on or about October 9, 1988, as a nonimmigrant until November 8, 1988. (*Id*.).

On February 23, 1995, he was convicted in the Brockton District Court in Brockton, Massachusetts, for the offense of possessing a firearm without an identification card. (Ex. E). He received a six month sentence. (*Id*.). On December 16, 1996, he was convicted in the Brockton District Court, Brockton, Massachusetts, for violating a protective order and for assault and battery. (Ex. C & D). He received a one year sentence to be served at the Plymouth House of Corrections. (*Id*.).

The petitioner was adjusted to a lawful permanent resident status on June 19, 1998. (Ex. B). On April 27, 1999, he was arrested by the former Immigration and Naturalization Service (now Department of Homeland Security) (the "DHS") with a "no bond" determination. (Ex. F). On April 27, 1999, DHS issued a "Notice to a Appear" (Form I-862) concerning the petitioner. He was charged as being removable under section 237(a)(2)(A)(iii)[2] of the Immigration and Nationality Act ("the Act" or "the INA"), as an alien convicted of an aggravated felony/crime of

---

[1] Unless noted elsewhere, the documents identified as "Ex. ___" are attached to the respondents' response (doc. 17).

[2] 8 U.S.C. § 1227(a)(2)(A)(iii).

violence and INA section 237(a)(2)(C),[3] as an alien convicted of a firearms offense.  (Ex. G).

DHS lodged an additional allegation in the removal proceedings on November 29, 1999, adding

the petitioner's previous firearms conviction.  (Ex. H).

On December 3, 1999, an Immigration Judge denied DHS's application for adjustment of

status under section 245 of the Act; and ordered the petitioner removed from the United States to

Cape Verde on the charges contained in the Notice to Appear.  (Ex. I).  On January 18, 2000, the

petitioner was released from DHS custody by posting a $7,000 bond.  (Ex. J).  On January 23,

2001, the petitioner appealed the Immigration Judge's decision.  (Ex. K).  During the pendency

of his appeal, the petitioner was returned to the custody of the DHS on February 6, 2001,

pursuant to a detainer lodged by the DHS following his being "picked up + served time" for an

unspecified offense.  (Ex. L).

On May 10, 2001, the Board of Immigration Appeals ("the Board") remanded the

petitioner's case to the Immigration Judge for further proceedings.  (Ex. M).  The Immigration

Judge adjudicated the respondent's application for  adjustment of status on July 24, 2002, and

later issued a written decision on August 1, 2002, denying his application for adjustment of status

and ordered that he be removed from the United States to Cape Verde on the charges contained

in the Notice to Appear and the lodged charge.  (Ex. N).

On February 5, 2003, the BIA affirmed the Immigration Judge's decision.  (Ex. O).  The

petitioner next filed a motion to reopen his case with the Board on April 15, 2003.  (Ex. P).  On

May 7, 2003,  the BIA denied the petitioner's motion to reopen.  (Ex. Q).  The petitioner then

filed a motion to reconsider with the Board on June 4, 2003.  (Ex. R).  On June 3, 2003, the

---

[3] 8 U.S.C. § 1227(a)(2)(C).

Board denied the petitioner's motion to reconsider. (Ex. S).

On November 7, 2002, the petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Eastern District of New York, challenging his final removal order and his continued detention. (Ex. T). On November 12, 2002, his application for a stay of deportation was granted by the court, pending the resolution of the petition for a writ of habeas corpus. (Ex. U). The petition was later transferred to the Western District of Louisiana on July 3, 2003, with the stay of deportation remaining in effect. (Ex. V).

On February 23, 2003, the petitioner filed a petition for review with the United States Court of Appeals for the Second District, but the case was later transferred to the Fifth Circuit Court of Appeals per order filed on the same date. (Ex. W).

On August 25, 2003, the United States District Court for the Western District of Louisiana entered an order lifting the stay of the transferring court. (Ex. X). On October 10, 2003, the Fifth Circuit Court of Appeals issued an order, denying the petitioner's motion for a stay of deportation pending review and granted the government's motion to dismiss petition for review for lack of jurisdiction. (Ex. Y). On November 18, 2003, the Fifth Circuit Court of Appeals denied the petitioner's motion for reconsideration. (Ex. Z).

By order of December 8, 2003, the United States Court of Appeals for the Second Circuit transferred a second petition for review (Docket No. 03-40301) filed by the petitioner to the United States Court of Appeals for the Fifth Circuit. (Ex. AA).

On March 2, 2004, the United States District Court for the Western District of Louisiana, dismissed the petitioner's habeas petition with prejudice. (Ex. BB). The petitioner filed a notice

appealing the decision dismissing his petition for a writ of habeas corpus. He requested a stay of the execution of the judgment. (Ex. CC). In an order issued on March 17, 2004, the United States District Court for the Western District of Louisiana determined that it lacked jurisdiction under 8 U.S.C. § 1252(f) to grant the petitioner the relief that he was seeking and denied his motion for a stay. (Ex. DD).

On April 14, 2004, the Fifth Circuit issued a decision, ordering that the Petitioner's "Notice of Appeal" be treated as a motion for stay of deportation pending appeal and denying the same. (Ex. EE). On November 4, 2004, the petitioner filed a motion for a stay of deportation in the Fifth Circuit and that motion was denied on March 21, 2005. The Pacer print-out of the docket sheet from the Fifth Circuit reflects that the government has filed a notice of intent to deport the petitioner and that "Consulate will not issue travel papers until court rules on appeal." (Ex. OO and Pacer Docket Sheet Entry dated November 5, 2004). On June 17, 2005, the Court of Appeals for the Fifth Circuit denied the petitioner's challenge to his deportability, upholding the lower court. (Doc. 22, Ex. 1).

Regarding his custody administrative review, DHS notified the petitioner on February 27, 2003, that he was ineligible for custody review pursuant to 8 C.F.R. § 241.4 due to the judicial review of his removal order and the judicial grant of a stay of removal at that time. (Ex. FF). The petitioner was served a Form I-229(a) (Warning for Failure to Depart) on November 12, 2003, which the petitioner refused to sign. (Ex. GG).

On November 6, 2003, the DHS submitted a request to the Consulate General of Cape Verde for a travel document on behalf of the petitioner. (Ex. HH).

On December 15, 2003, the DHS served on the petitioner a "Notice to Alien of File

Custody Review," notifying the petitioner that a custody review would be conducted on or about January 14, 2004. (Ex. I I). A post-order custody review was conducted on January 14, 2004. On March 2, 2004, the decision was made to continue the petitioner's detention. (Ex. JJ). The petitioner was notified of the decision on March 9, 2004. (Ex. KK). In denying the petitioner release, DHS noted that the petitioner had filed for, and received, several stays of deportation, that travel documents can be obtained from Cape Verde, and that the petitioner's weapons conviction made him a danger to society. (Ex. KK).

On April 1, 2004, the DHS issued a request for travel documents on behalf of the petitioner. (Ex. LL). The Interim Field Officer Director sought assistance from the Detention and Removal Office in Headquarters, Washington, D.C., to secure a travel document in behalf of the petitioner. (Ex. MM). On October 14, 2004, the DHS issued the petitioner a Warning for Failure to Depart. (Ex. NN).

On October 26, 2004, the Cape Verde Consulate advised the Deportation Officer that it was ready to issue a travel document and requested an interview with the petitioner and an itinerary prior to issuance of the travel document. (Ex. OO). However, the day after the Consular Officer's interview with the petitioner, the Consular Officer "advised will await the US Court of Appeals for the 5th Circuit decision, on November 10, 2003, prior to any action on issuing travel document." (Ex. OO).

On November 8, 2004, the Field Office Director issued a Decision to Continue Detention Following File Review in which he stated:

> You have been convicted of possession of a firearm without a firearm ID, and violation of a protective order, and assault and battery. The consulate of Cape Verde regularly issues travel documents to its citizens for repatriation. It is likely a travel document will be issued by your government.

6

(Ex. OO).

On or about October 2, 2004, the petitioner filed the instant writ of habeas corpus. In his petition, he challenges the constitutionality of his continued detention in light of the United States Supreme Court decision in *Zadvydas*.

## DISCUSSION

The petitioner asserts that his continued detention by the respondents violates 8 U.S.C. § 1231(a)(6)[4] as it has been interpreted by *Zadvydas* because "the presumptively reasonable period for removal efforts has expired," he still has not been removed and he "continues to languish in detention." (Petition at p. 6). Additionally, he alleges due process violations. (*Id*. at pp. 7-8). The respondents counter that he has failed to show a likelihood that he will not be repatriated in the reasonably foreseeable future. (Doc. 17 at p. 10). The petitioner responds in a lengthy objection, asserting that the respondents have not met their burden in continuing his detention. (Doc. 19).

Section 241(a) of the INA, 8 U.S.C. § 1231(a) provides that the Attorney General is afforded a 90-day period to accomplish the alien's removal from the United States following the entry of a final order of deportation or removal. *See* 8 U.S.C. § 1231(a)(1)(A)-(B).[5] In

---

[4] Section 1231(a)(6) provides:

Inadmissible or criminal aliens

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

[5] Section 1231(a)(1)(B) provides:

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final;

7

*Zadvydas*, the United States Supreme Court held that section 241(a) of the INA authorized detention, after entry of an administratively final order of deportation or removal, for a period reasonably necessary to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal after the removal period has commenced. *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* So long as removal is reasonably foreseeable, the alien's potential dangerousness or risk of his committing further crimes may be considered in determining whether to retain custody. *Zadvydas*, 533 U.S. at 700.[6]

Additionally, section 1231(a)(1)(C) states:

> [t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make a timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to

---

> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

[6] *See also* 8 C.F.R. § 241.4 (2004). Citing *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995), *cert. denied*, 516 U.S. 976 (1995), the respondents also note that immigration detention that provides review with the possibility of release is neither indefinite nor unconstitutional.

8

an order of removal.

8 U.S.C. § 1231(a)(1)(C); *see also* 8 C.F.R. § 241.4(g)(5)(I).

Under the foregoing authorities, the petitioner has a responsibility in assisting in the securing of his necessary travel documents. In addition, various authorities recognize that an alien may extend his removal period by "act[ing] to prevent the alien's removal" which includes acts that are not illegal. For instance, in *Akinwale v. Ashcroft*, 287 F.3d 1050, (11th Cir. 2002), the Eleventh Circuit Court of Appeals noted that the submission of a motion to stay removal acts to prevent removal within the meaning of 8 U.S.C. § 1231(a)(1)(C). *Akinwale*, 287 F.3d at 1052 n.4. *See also Balogun v. INS*, 9 F.3d 347 (5th Cir. 1993) (six month period equitably tolled until alien begins to cooperate with repatriation efforts or alien's obstruction no longer prevents repatriation). The Eleventh Circuit in *Akinwale* further found that, in order to state a claim under *Zadvydas*, the alien not only must show post-order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Akinwale*, 287 F.3d at 1052.

The petitioner herein is incorrect in his assertion that continued detention violates *Zadvydas* or due process. As stated by the respondents, "[w]hile the Department's efforts to remove the petitioner to Cape Verde have not been fruitful to date, it is the petitioner's own acts that have prevented, and prevent, his repatriation." (Doc. 17 at p. 13). This court agrees, the record demonstrates that the government of Cape Verde has advised the DHS that it will issue travel documents once the petitioner concludes his pending litigation. (Ex. OO). Under these circumstances, the court cannot conclude that it is unlikely that his removal will not be accomplished in the reasonably foreseeable future. To the contrary, it is evident that after the

petitioner's legal actions are completed, Cape Verde will issue the necessary travel documents if appropriate. The petitioner is therefore entitled to no relief on his present claims.

## CONCLUSION

Premised on the foregoing, this matter is due to dismissed. An appropriate order will be entered.

The Clerk of the Court is **DIRECTED** to serve a copy of this memorandum opinion upon the petitioner.

**DONE**, this the 6th day of July, 2005.

*/s/ Robert B. Propst*
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**